STATE of Vermont v. Stephen J.
HEATH

[649 A.2d 243]

No. 92-126

August 11, 1994.

The assault occurred after the victim left a bar in Newport and was sitting along the shore of Lake Memphremagog. Her attackers pulled her to the ground and one penetrated her vagina with his penis. The assault was discontinued because of an approaching vehicle. After showering at the home of a friend, the victim reported the assault to the police. An examination of the victim was done at North Country Hospital. Bodily fluids and hair samples were taken for laboratory analysis. Also taken were the clothes she was wearing at the time of the assault. Examination of the victim's underpants turned up an unidentified foreign hair sample. The victim later identified defendant as her assailant.

Because the State believed that physical evidence would help in building its case against defendant, the State sought and obtained a nontestimonial identification order for defendant to produce samples of bodily fluids and hair. The samples were produced on November 4, 1990. The analysis of the bodily fluids by the state lab was inconclusive, as was the DNA analysis by the Federal Bureau of Investigation (FBI).

The analysis of the hair sample from the victim's clothing was on a different track. It, along with hair samples from defendant, was sent to the FBI in January 1991. Despite a series of discovery motions by defendant, the FBI analysis was not provided to defendant by the date of trial, June 26, 1991. Consequently, defendant filed a new motion to compel production of the analysis on the eve of trial and a motion for continuance based in part on nondisclosure of the FBI analysis. The court failed to rule on the motion to compel and denied the motion for continuance.

At trial, defendant argued that the victim misidentified him as the assailant. The jury rejected this theory and returned a guilty verdict on June 27, 1991. After the trial was concluded, an FBI lab report, dated June 24, 1991, was received and provided to defendant. The report concluded that the defendant's hair samples did not match the hair found in the victim's underpants.

Defendant filed a motion for a new trial based on the State's failure to provide the FBI report. Analyzing defendant's claim for a new trial as based on newly discovered evidence, the trial court held that defendant failed to sustain his burden of showing that the FBI hair analysis probably would have changed the result of the trial. On appeal, defendant argues that he

need not make such a showing under the circumstances. We agree.

Criminal Rule 33 authorizes the grant of a new trial "if required in the interests of justice." The standard is intentionally broad so that the courts can ensure that trials are fair without necessarily having to pigeonhole the grounds into narrow and specific findings of error. See *United States v. Narciso*, 446 F. Supp. 252, 304 (E.D. Mich. 1977) (wording of rule "mandate[s] the broadest inquiry into the nature of the challenged proceeding"); *State v. Talbot*, 408 So. 2d 861, 887 (La. 1980) (in ruling on new trial motion, court is not confronted with "narrow, merely technical, question"). Thus, the court can grant a new trial when it "has any doubt about the fairness or impartiality of a trial." *Sterling v. State*, 791 S.W.2d 274, 276 (Tex. Ct. App. 1990). Grant of a new trial can be warranted by the cumulative effect of numerous concerns, no one of which can be characterized as reversible error, when the court is convinced that a miscarriage of justice ensued. See *Collins v. State*, 423 So. 2d 516, 518 (Fla. Dist. Ct. App. 1982).

The normal remedy for failure of the State to meet a discovery obligation is a continuance until defendant can receive the discovered material and prepare a case in response to it. See V.R.Cr.P. 16.2(g)(1). This Court has long held that a criminal defendant "is entitled to a reasonable opportunity to procure and present the witnesses necessary to his defense, including a postponement of his trial, if need be." *State v. Maguire*, 100 Vt. 476, 480, 138 A. 741, 743 (1927). Failure to provide a continuance when the State fails to fulfill a discovery obligation is reversible error if defendant demonstrates resulting prejudice. See *State v. Evans*, 134 Vt. 189, 192, 353 A.2d 363, 365 (1976). The FBI laboratory analysis is exactly the kind of evidence needed to prepare a proper case. See *State v. Stroud*, 459 N.W.2d 332, 335 (Minn. Ct.

App. 1990) (reversible error to deny prosecution continuance to obtain FBI DNA analysis when victim unable to give more than general description of her attacker); *Lomax v. Commonwealth*, 319 S.E.2d 763, 764–66 (Va. 1984) (when state produced critical lab report at trial, defendant entitled to continuance to investigate and evaluate evidence).

Defendant was prejudiced by the denial of the continuance. The evidence was relevant and exculpatory. Defendant's theory that another person committed the assault was supported by the fact that the unidentified hair sample from the victim's underpants did not match the sample given by defendant. Only a short delay was necessary to secure the lab analysis.

Although the trial court has discretion in determining whether to grant a continuance and a new trial, there was no exercise of discretion in this case. The trial court failed to respond to the motion to compel and ignored the absence of important evidence, denying the motion to continue only because a trial date had been set. A new trial is required in the interests of justice.

Defendant has also argued on appeal that a statement given by him at the police station should have been suppressed because he was given no opportunity to consult with an adult as required by *In re E.T.C.*, 141 Vt. 375, 379, 449 A.2d 937, 940 (1982). The issue was not preserved below, and we do not consider it. See *State v. Ayers*, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987).

*Reversed and remanded.*

**Allen, C.J.,** dissenting. The majority faults the trial court for analyzing defendant's claim for a new trial as based on newly discovered evidence. This, however, is precisely the claim that defendant made to the trial court. The motion for a new trial was not, as suggested by the majority, based on the failure to provide

the FBI report. This ground was not even mentioned in the supporting memorandum or in argument on the motion.

At argument on the motion, defendant conceded that the prosecution did not have the FBI report, and went on to argue that the results of the hair testing should be subjected to the analysis for newly discovered evidence mandated by *State v. Miller*, 151 Vt. 337, 560 A.2d 376 (1989). The court examined the claim under the new evidence standard. Defendant cannot complain on appeal of action that he requested the court to take. *State v. Grenier*, 158 Vt. 153, 157, 605 A.2d 853, 856 (1992).

The majority also concludes that defendant was prejudiced by the denial of the continuance. The request for a continuance came in a letter requesting a two-week delay in the start of the trial because of the death of the father of defense counsel's investigator. The letter also stated that the defense was awaiting discovery, but was prepared to proceed to trial in two weeks and did not condition this willingness upon the receipt of the discovery. The motion was denied by a judge other than the trial judge. At the argument on the new trial motion, defense counsel stated that the trial judge strongly implied that he wanted to proceed to trial, to which the defense attorney responded, "Fine." Defense counsel also said that, at the time, he might have preferred not to proceed with the trial, but he also admitted that he had not argued strenuously for a continuance. By responding that it was "Fine" to proceed to trial, defendant abandoned the earlier request for continuance, which was not based on the ground now asserted.

The majority opinion also states that there was a failure on the part of the State to meet a discovery obligation. Defendant was seeking the results of the FBI testing requested by the State. He did not ask for independent testing or a delay to have that done. The prosecution was obligated to provide such results if "within the prosecuting attorney's possession, custody, or control." V.R.Cr.P. 16(a)(2)(C). Under the circumstances of this case, the discovery obligation of the prosecutor did not arise until the test result was received. Unlike the majority opinion, the record makes clear that the prosecution had not received the FBI report prior to the conclusion of the trial. Also, defense counsel stressed in the new trial hearing that he did not believe that the prosecution should be held accountable for the reporting delay, or that defendant was the victim of any prosecutorial misfeasance.

The majority's assertion that only a short delay was needed to secure the lab analysis is pure hindsight. A State chemist had called the FBI one week before trial to inquire about the testing, and was informed that testing had not begun. There was no failure to comply with the discovery obligation, and the trial court was not required to grant a continuance on a ground that defendant had not suggested.

I also fail to see how defendant was prejudiced by the court's denial of the motion to continue. In cross-examination of the investigating officer, defendant established that evidence was sent to the FBI, and that if any such evidence tended to tie defendant into the case, the officer would know about it. The obvious inference from the State's failure to present FBI test results linking defendant to the case is that such inculpatory evidence did not exist. Defendant argues that the test results showing no match would have exculpated him. But considering that a hair sample was taken from the victim of a brief sexual assault after she had showered, changed her clothes and gone to bed, the FBI report would not have altered the inference of guilt that the jury already had derived from other substantial evidence, including the victim's eyewitness identification. Thus, the FBI re-

port would not have changed the result and defendant was not prejudiced.

*I would affirm.*